IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JASON C. COOPER,                                    6:11-cv-06328-MA

            Plaintiff,                              OPINION AND ORDER

     v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

            Defendant.

KATHRYN TASSINARI
1700 Valley River Drive
Eugene, Oregon 97401

     Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

SCOTT T. MORRIS
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
1301 Young Street, Suite A-702
Dallas, Texas 75202

     Attorneys for Defendant


1 - OPINION

MARSH, Judge

Plaintiff, Jason C. Cooper, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and Supplemental Security Income (SSI) disability benefits under Title XVI of the Act. 42 U.S.C. §§ 401-434, 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, I AFFIRM the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

On February 26, 2008, plaintiff protectively filed applications for SSI and DIB alleging disability due to "heart, neurological, and stomach difficulties including fatigue, weakness, and memory problems." Tr. 111, 115, 141. The Commissioner denied plaintiff's application initially and upon rehearing. A hearing before an Administrative Law Judge (ALJ) was held on September 23, 2010, in Eugene, Oregon, at which plaintiff was represented by counsel and testified. Additionally, Vocational Expert (VE) Jeffrey F. Tittlefitz was present throughout the hearing and testified.

On October 14, 2010, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. After the

Appeals Council denied review, plaintiff timely filed a petition for review in this court.

## FACTUAL BACKGROUND

Born on April 18, 1973, plaintiff was 33 years old on the alleged onset date of the disability, and 37 years old on the date of the hearing. Tr. 29, 110. Plaintiff has the equivalent of a high school diploma, and has past relevant work experience as a gas station attendant, parking lot attendant and valet, and floor attendant in a casino. Tr. 31, 39.

Plaintiff alleges his various conditions became disabling on June 7, 2006. Tr. 111-17. Plaintiff has been seen by several doctors, although his primary care physician throughout much of the relevant period was Hsiang-Sen R. Yeh, M.D. Plaintiff's clinical therapist, Nancy Gentry, M.S.W., prepared a Mental Residual Functional Capacity (RFC) Assessment. Ryan Scott, Ph.D., a licensed psychologist, performed a Psychodiagnostic Evaluation. Dr. Dorothy Anderson, Ph.D., prepared a Psychiatric Review Technique and Mental RFC Assessment, and Mary Ann Westfall, M.D., prepared a Physical RFC Assessment.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is

3 - OPINION

potentially dispositive.  The claimant bears the burden of proof at Steps One through Four.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform.  See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date, June 7, 2006.  See 20 C.F.R. §§ 404.1520(a)(4)(1), (b), 416.920(a)(4)(i), (b); Tr. 13.

At Step Two, the ALJ determined that plaintiff's heart palpations, type I bipolar disorder, and post-traumatic stress disorder (PTSD) were severe impairments.  See 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); Tr. 13.  In addition, the ALJ found that plaintiff's history of alcohol use, Barrett's esophagus, gastroesophageal reflux disease (GERD), and sleep apnea were non-severe impairments that the ALJ considered in arriving at plaintiff's RFC.  Tr. 13-14.

At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 14-15.

The ALJ determined that plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c)

subject to the limitations that the plaintiff cannot climb ladders, ropes, or scaffolds; have exposure to hazards; work closely with others; or have more than occasional contact with the general public.  Tr. 15-19.  The ALJ found that plaintiff can understand, remember, and carry out simple instructions, and occasionally climb stairs and ramps, balance, stoop, kneel, crouch, or crawl.  Id.

At Step Four, the ALJ found that plaintiff is unable to perform any past relevant work.  See 20 C.F.R. §§ 404.1565, 416.965; Tr. 19.

At Step Five, however, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including janitor, hand packager, and bottle packer. See 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a); Tr. 20.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff asserts the ALJ erred in five ways.  First, plaintiff argues that the ALJ improperly discredited plaintiff's testimony.  Second, plaintiff asserts that the ALJ improperly discounted the opinion of Ms. Gentry, plaintiff's clinical therapist.  Third, plaintiff contends that the ALJ erred by discounting the opinion of Dr. Scott, the examining psychologist. Fourth, plaintiff argues that the ALJ erroneously failed to include

his gastrointentinal problems, including irritable bowel syndrome, as a severe impairment at Step Two, and consider them in the RFC. Finally, plaintiff claims that the Commissioner failed to meet its burden of proving that plaintiff can perform other work.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

///

///

///

6 - OPINION

## DISCUSSION

### I. Step Two

Plaintiff argues that the ALJ failed to include his gastrointestinal conditions, specifically his alleged IBS, at Step Two. At Step Two, the ALJ must determine whether a claimant has one or more impairments that significantly limit his or her ability to conduct basic work activities. Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005); 20 C.F.R. §§ 404.1520(c), 404.1521.

In this case, the ALJ resolved Step Two in plaintiff's favor, concluding that plaintiff had demonstrated impairments (heart palpations, type I bipolar disorder, and PTSD) necessary to satisfy Step Two. The ALJ continued the sequential decision-making process until reaching a determination at Step Five. Thus, any error in failing to include plaintiff's IBS at Step Two did not prejudice him at that step, as Step Two was resolved in his favor. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (any failure to list bursitis as severe at Step Two was harmless error where the ALJ considered functional limitations of bursitis at Step Four); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting obesity from list of severe impairments at Step Two was harmless because Step Two was resolved in claimant's favor). Thus, any error in failing to find his IBS a severe impairment was harmless.

To the extent plaintiff contends the ALJ failed to consider his IBS in the RFC, I address the issue below.   See 20 C.F.R. § 404.1523 (once claimant has surmounted Step Two, the ALJ must consider the functional limitations imposed by all medically determinable impairments in the remaining steps of the decision).

## II.   RFC

### A.   Rejection of Plaintiff's Testimony

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis.   20 C.F.R. §§ 404.1529, 416.929.   First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.   Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).   Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so.   Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive."   Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).   In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the

court to conclude that the ALJ did not arbitrarily discredit the claimant." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

In a Function Report submitted on March 3, 2008, plaintiff stated that he "can't do much of anything anymore." Tr. 161. Plaintiff reports that his typical daily routine is to try to walk approximately two blocks after waking up and eating, then rest the remainder of the day. Tr. 156. Sometimes, plaintiff stated, he goes to addiction recovery meetings. Id. Plaintiff testified that his disability interferes with his ability to dress, bathe, groom himself, and make food from scratch. Tr. 157. Plaintiff reported that he goes shopping one time per month for approximately 30 minutes, but is too weak to do other house or yard work. Tr. 158-59. Plaintiff stated that he experiences delusions, hallucinations, depression, and mania. Tr. 162.

At the hearing, plaintiff testified that he has panic attacks three or four times per week, lasting for between three and ten hours. Tr. 46. Plaintiff reported that most of the panic attacks occur while he is home alone, but also are frequently triggered by going out in public. Id. Plaintiff stated that his bipolar disorder caused him to be depressed most of the time, with periodic manic episodes. Tr. 47. Plaintiff testified that none of his prescribed medications worked. Tr. 48. As to his daily activities, plaintiff testified that he spent most of his days in bed, while receiving visits from Ms. Gentry, his clinical

9 - OPINION

therapist, once a week. Tr. 48-51. Finally, plaintiff stated that he had attempted suicide previously, with the most recent attempt occurring less than one year before the hearing, but that he did not tell anybody at the time. Tr. 52.

The ALJ rejected plaintiff's testimony as to the severity of the symptoms associated with his various ailments. The ALJ did not make a finding that plaintiff was malingering. Therefore, the ALJ was required to identify clear and convincing reasons for discounting plaintiff's testimony. Smolen, 80 F.3d at 1281. I find the ALJ's reasons readily meet this standard and are supported by substantial evidence in the record.

The ALJ cited numerous instances of inconsistency between plaintiff's statements and his alleged symptoms. The ALJ noted that throughout 2008, plaintiff reported to his primary care physician, Dr. Yeh, that his depression and anxiety were stabilizing. Tr. 16. On April 25, 2008, plaintiff reported that his mental health was much improved, with much less anxiety, and that he felt "the best since several years ago." Tr. 334. At his next appointment on May 30, 2008, plaintiff reported that his mood had been steady, and that he was slowly going back to work. Tr. 332-33. Nonetheless, plaintiff asked Dr. Yeh to take him off Depakote due to high costs, and because the Paxil and trazodone were "taking care of his condition." Id. Similarly, at his following appointment on September 10, 2008, plaintiff reported

10 - OPINION

that his "mood has been steady and he has been able to work."[1]  Tr.
330.  Despite reporting in May that the Paxil was taking care of
his condition and continuing to stabilize his mood, at the
September appointment, plaintiff asked to be taken off Paxil
because it was causing erectile dysfunction.  Id.

     The ALJ also discussed that plaintiff reported to a therapist
on April 13, 2009 that he was afraid to leave the house on a daily
basis, and that he had been suffering from such fears all his life.
Tr. 16, 416.   The ALJ noted plaintiff stated at that time that
panic attacks were occurring between three and four times per day,
and that it had been "worse in the last couple of years." Tr. 416.
The ALJ reasonably found the report that his anxiety had been
"worse in the last couple years" was inconsistent with plaintiff's
reports of improvement to Dr. Yeh throughout 2008.  Id.

     The ALJ also discredited plaintiff on the basis of his lack of
candor regarding his mental impairments to a treatment provider,
Marlon Fletchall, M.D.    Tr. 17.    At the hearing, plaintiff
testified that he failed to report his mental health issues to Dr.
Fletchall because he tries to keep his impairments from most
people.  Tr. 45. Additionally, the ALJ pointed out that plaintiff
cancelled approximately one-third of his scheduled counseling

_____

[1] Plaintiff later explained that this statement was not
true, and that he likely made it to give Dr. Yeh the impression
that plaintiff could pay his medical bills.  (Tr. 34, 355.)  This
explanation does little to rehabilitate plaintiff's credibility.

appointments.   Tr. 17, 414.   The ALJ also noted that plaintiff claimed to have quit his last job due to his mental impairments, but he never discussed that with his employer.   Tr. 16, 45.   The ALJ could reasonably infer from these facts that plaintiff's mental impairments were not as severe as alleged.

The ALJ also indicated that the record contained no mental health records from April 2009 through April 2010, suggesting that plaintiff was not undergoing mental health treatment during a year-long period during which plaintiff alleges disability.   Tr. 17.   An unexplained failure to seek medical treatment is a proper basis upon which to discredit a plaintiff's subjective testimony.   Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

In sum, I find the ALJ's reasons for discounting plaintiff's testimony, taken together, constitute clear and convincing reasons, supported by substantial evidence in the record, upon which the ALJ could discount plaintiff's testimony.

### B.   Social Worker Nancy Gentry's Opinion

A clinical therapist who is not working in conjunction with a physician is considered an "other source," which the ALJ may discount upon providing reasons germane to the witness.   See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010); 20 C.F.R. §§ 404.1513(d)(3), 416.913(d)(3).   Plaintiff agrees that Ms. Gentry is an "other source," but contends that the ALJ should have given her opinion greater weight.

Ms. Gentry submitted a Mental RFC Assessment in which she stated that plaintiff "would have difficulty working at this time due to his moderate to severe symptoms of depression, anxiety, and panic attacks." Tr. 461. In addition, Ms. Gentry attached an April 13, 2010 assessment of plaintiff. Tr. 464-71.

The ALJ discredited Ms. Gentry's opinion because it relied on plaintiff's self-reporting, which the ALJ found to not be credible. An ALJ may reject a therapist's opinion if it is based on a plaintiff's subjective self-reporting which has been properly discredited. See Williamson v. Comm'r of Soc. Sec., 428 Fed.Appx. 609, 2011 WL 2421147 at *1 (9th Cir. 2011); Bell-Shier v. Astrue, 312 Fed.Appx. 45, 2009 WL 319694 at *2 (9th Cir. 2009). Additionally, as the ALJ noted, there is little evidence of treatment history from April of 2009 through April of 2010. Tr. 18. Therefore, I find the ALJ has provided adequate, germane reasons for rejecting Ms. Gentry's opinion.

## C.   Dr. Scott's Opinion

Plaintiff argues that the ALJ erred in discounting the opinion of Dr. Scott, an examining physician. The opinion of an examining physician is generally entitled to greater weight than a non-examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician. Id. If the examining physician's opinion is contradicted by that

13 - OPINION

of another doctor, the ALJ must present specific and legitimate reasons supported by substantial evidence in the record to discount the opinion of the examining physician.   Id. at 830-31.

An ALJ may only reject the testimony of an examining physician in favor of a non-examining physician upon presenting specific, legitimate reasons, supported by substantial record evidence. Lester, 81 F.3d at 831 (quoting Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)).  A contradictory opinion of a non-examining physician alone is not substantial evidence sufficient to reject the opinion of an examining physician.   Lester, 81 F.3d at 831; Canterbury v. Astrue, No. 3:11-cv-00293-AC, 2012 WL 1801911 at *7 (D. Or. Mar. 22, 2012).  The opinion of a non-examining physician may serve as substantial evidence where the opinion is consistent with other clinical findings or other evidence in the record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

The parties disagree as to whether the ALJ was required to provide clear and convincing reasons or specific and legitimate reasons to discount Dr. Scott's opinion.   Dr. Scott reviewed plaintiff's records, and conducted an interview with plaintiff where he administered a series of structured questions and three questionnaires.   Tr. 342-49.   Dr. Scott evaluated plaintiff on October 21, 2008, one month after plaintiff told Dr. Yeh that his "mood has been steady and he has been able to work." Tr. 330, 342. Dr. Scott found that, "[b]ased on [plaintiff's] self-report and

involvement with the clinical interview, it is this writer's opinion that he does appear to have significant impairment with bipolar disorder and posttraumatic stress disorder, both of which have caused him difficulties in maintaining employment." Tr. 346.

Dr. Scott's opinion was contradicted by Dr. Dorothy Anderson, a non-examining, reviewing psychologist. Tr. 362. Dr. Anderson found that "overall, it appears claimant would be able to persist in simple task jobs that do not require a lot of coworker involvement or general public." Tr. 362. In her Mental RFC Assessment of plaintiff, Dr. Anderson found that plaintiff's ability to work was not significantly impaired in a number of respects, notably including the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 373. In fact, Dr. Anderson only found plaintiff had three functional limitations: a moderate limitation in the ability to understand and remember detailed instructions, a marked limitation in the ability to carry out detailed instructions, and a moderate limitation in the ability to interact appropriately with the general public. Tr. 372-73. The opinions of Dr. Anderson and Dr. Scott, then, contradict each other as to the extent of plaintiff's work-related mental limitations. Thus, the ALJ may only reject Dr. Scott's opinion upon presenting specific and legitimate reasons supported by

substantial evidence in the record.   See Lester, 81 F.3d at 831.
I conclude that the ALJ did so.

The ALJ gave Dr. Scott's assessment little weight because the
assessment was based on plaintiff's self-reporting, which the ALJ
properly found to lack credibility, and was a one-time interview.
Tr. 18.   As the ALJ noted, Dr. Scott's opinion relies almost
exclusively on plaintiff's subjective self-reporting.   While Dr.
Scott appears to have compiled plaintiff's background information
from his review of the record, many of those documents - such as
Dr. Yeh's records - also relied on plaintiff's subjective
complaints.   Additionally, while the structured questions
constituted objective testing, the three questionnaires largely
relied upon plaintiff's self-reporting.   Tr. 344-45.   Most
importantly, Dr. Scott's conclusion that plaintiff is significantly
impaired primarily refers to the questionnaires and plaintiff's
self-reports.   Tr. 346.

Notably, on the Personality Assessment Inventory, Dr. Scott
reported that the results were invalid "likely due to either a
deliberate attempt to appear more pathological than would be
warranted, or that [plaintiff] is experiencing significant
psychopathology to the degree of using the PAI as a 'cry for
help.'"   Tr. 345.   Thus, it appears that Dr. Scott also had
questions about the reliability of plaintiff's self-reporting, but
did not account for this in his conclusion.   The ALJ could

16 - OPINION

reasonably find that Dr. Scott's opinion was based on plaintiff's subjective self-reporting, which the ALJ properly discredited.

The ALJ also gave Dr. Scott's opinion less weight because Dr. Scott interviewed plaintiff only once. Tr. 18. The length of the treatment relationship and frequency of examination is one of the factors ALJs use to assign weight to medical opinions. 20 C.F.R. §§ 404.1527(c)(2)(i),(e)(1)(ii), 416.927(c)(2)(i),(e)(1)(ii). While this reason alone would be insufficient to reject Dr. Scott's opinion, in combination with the reasons discussed above, the ALJ did not err in giving Dr. Scott's opinion less weight because he was only a one-time examining psychologist. I conclude that these reasons for giving Dr. Scott's opinion less weight are specific and legitimate, and supported by substantial evidence in the record. See Lester, 81 F.3d at 830-31.

## D.  **Gastrointestinal Issues**

Plaintiff argues that the ALJ failed to adequately account for his gastrointestinal difficulties in the RFC. Plaintiff complains that the ALJ failed to specifically discuss his alleged IBS in the RFC, and to properly consider his attendant functional limitations of unpredictable bouts of pain with constipation and diarrhea.

In the decision, the ALJ noted plaintiff's complaints that his gastrointestinal issues cause him constipation, diarrhea, and stomach pain, rendering him unable to work. Tr. 17. Ultimately the ALJ found that the objective medical evidence did not

17 - OPINION

corroborate plaintiff's allegations concerning his abdominal ailments.  Id.

As the ALJ discussed, plaintiff complained to doctors about suffering from abdominal pain numerous times, but despite these repeated complaints there was still no clear etiology for his complaints in January, February, or March of 2009.  The ALJ's findings in this regard are supported by substantial evidence. Plaintiff's abdominal examinations were objectively unremarkable on a consistent basis.  E.g., Tr. 197, 231, 196-97, 388-89, 398, 431, 451.  For example, on January 13, 2009, Dr. Mark A. Litchman noted a probable IBS diagnosis, but that a gastrointestinal evaluation was necessary for confirmation.  Tr. 396.  A subsequent abdominal ultrasound on March 2, 2009 showed no remarkable findings.  Tr. 450.  Plaintiff was noted to be scheduled for an endoscope in February of 2009.  On February 19, 2009, Dr. John R. Ford reported that plaintiff's colonoscopy was unremarkable, but that biopsies indicated Barrett's esophagus.  Tr. 453.  There is no record of plaintiff complaining of alleged IBS symptoms to his treatment providers thereafter.

The ALJ found that plaintiff did not complain of any functional limitations caused by his diagnoses of GERD and Barrett's esophagus - findings that plaintiff does not challenge. I disagree with plaintiff's suggestion that the ALJ erred in failing to discuss plaintiff's alleged IBS specifically, by name.

The ALJ did discuss plaintiff's gastrointestinal issues and his only alleged functional limitations – constipation and diarrhea – when fashioning plaintiff's RFC.  See Lewis v. Astrue, 498 F.3d at 911;  Tr.  17.  The ALJ detailed plaintiff's medical records concerning his gastrointestinal issues and the ALJ's findings are supported by substantial evidence.  Tr. 17.

Here, the only evidence supporting plaintiff's IBS symptoms were his subjective complaints.  Considering plaintiff's lack of credibility and the lack of corroborating objective medical evidence, it was not error for the ALJ to reject plaintiff's alleged limitations associated with the effects of his alleged IBS in the RFC.  See Burch, 400 F.3d at 681-84.

## V.   **Ability to Perform Other Work**

When an ALJ finds that the claimant's impairments preclude him from performing past relevant work, the burden shifts to the Commissioner at Step Five to show that the claimant can perform other work that exists in significant numbers in the national economy.  Lockwood v. Comm'r Social Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner can meet this burden by having a vocational expert testify at the hearing based on a vocational hypothetical.  Id. (quoting Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999)).  A vocational hypothetical is sufficient if it includes all of the claimant's limitations that are supported by substantial evidence in the record.  See Bayliss

v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  An ALJ may exclude limitations unsupported by substantial evidence in the record.  Id.

At the hearing, the VE testified that plaintiff could perform work that existed in significant numbers in the national economy based on the RFC and hypotheticals posed by the ALJ.  Plaintiff argues that the ALJ erred in failing to incorporate the limitations found in the opinions of Ms. Gentry and Dr. Scott, as well as the plaintiff's testimony.  In addition, plaintiff argues that the vocational hypothetical was insufficient because the RFC failed to account for plaintiff's IBS.

For the reasons discussed above, I have concluded that the ALJ did not err in assessing plaintiff's credibility and the opinions of Ms. Gentry and Dr. Scott, or rejecting the alleged limitations of plaintiff's IBS in the RFC.  Accordingly, the limitations included in the RFC and hypothetical were those that the ALJ found to be credible and supported by substantial evidence in the record. Thus, the hypothetical was sufficient, and it was proper for the ALJ to rely on the VE's answer.  See Bayliss, 427 F.3d at 1217-18; Lockwood, 616 F.3d at 1071.

///

///

///

///

20 - OPINION

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this /5 day of November, 2012.

Malcolm F. Marsh
United States District Judge

21 - OPINION